UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VINCENT T.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Case No. C19-0189 RBL

ORDER REVERSING AND REMANDING DENIAL OF BENEFITS

## I. INTRODUCTION

This matter is before the Court on Plaintiff's Complaint (Dkt. 3) for review of the Commissioner of Social Security's denial of his application for supplemental security income ("SSI") benefits. This is the second time this matter has been before the Court. *See* Admin. Record ("AR") (Dkt. 7) at 616-28.

Plaintiff has severe impairments of monocular vision, headaches, affective disorder, and anxiety disorder versus posttraumatic stress disorder ("PTSD"). *Id.* at 511. On December 19, 2013, Plaintiff applied for SSI benefits, alleging disability as of April 8, 2003. *Id.* at 59, 143-48. Plaintiff's application was denied on initial review and on reconsideration. *Id.* at 59-83.

At Plaintiff's request, Administrative Law Judge ("ALJ") M.J. Adams held a hearing on Plaintiff's claims. *Id.* at 36-57. On August 18, 2015, ALJ Adams issued a decision finding

Plaintiff not disabled and denying his claim for benefits. *Id.* at 12-23. The Appeals Council denied review. *Id.* at 1-3. Plaintiff then sought review in this Court. *Id.* at 501-04.

On September 28, 2017, U.S. Chief Magistrate Judge Brian Tsuchida issued a decision reversing and remanding the ALJ's decision for further administrative proceedings. *Id.* at 620-28. Chief Magistrate Judge Tsuchida ordered the ALJ on remand to, among other things, reevaluate the medical evidence, further develop the record as needed, and reassess the disability evaluation. *See id.* at 628.

On remand, ALJ Adams held a second hearing. *Id.* at 541-82. On January 15, 2019, ALJ Adams issued a decision again finding that Plaintiff was not disabled and denying his claim for SSI benefits. *Id.* at 508-22. The Appeals Council did not assume jurisdiction, so the ALJ's decision became the Commissioner's final decision. *See* 20 C.F.R. § 416.1484(d).

Plaintiff argues that ALJ Adams erred in (a) discounting Plaintiff's symptom testimony, and (b) evaluating five medical opinions in the record. Pl. Op. Br. (Dkt. 9) at 1. Plaintiff asks the Court to remand this matter for further administrative proceedings. *Id.*

## II. DISCUSSION

Pursuant to 42 U.S.C. § 405(g), the Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

**A.     The ALJ Harmfully Erred in Discounting Plaintiff's Symptom Testimony**

Plaintiff contends that the ALJ erred in rejecting his subjective symptom testimony. Pl. Op. Br. at 4-13. Plaintiff testified that he has difficulty walking, standing, and sitting due to low back and knee pain.[1] AR at 46-48, 551, 555-56. He testified that he cannot make a fist or grip with his left hand. *Id.* at 43-45, 551, 554-55. Plaintiff testified that he has headaches triggered by light exposure. *Id.* at 42, 45, 553-54. He testified that he cannot concentrate due to anxiety and does not get along with others. *Id.* at 48-49, 551-52, 558-60.

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). The ALJ must first determine whether the claimant has presented objective medical evidence of an impairment that "'could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014)). At this stage, the claimant need only show that the impairment could have caused some degree of the symptoms; he does not have to show that the impairment could be expected to cause the severity of the symptoms alleged. *Id.* The ALJ found that Plaintiff met this step because his medically determinable impairments could have caused the symptoms he alleged. AR at 515.

If the claimant satisfies the first step, and there is no evidence of malingering, the ALJ may only reject the claimant's testimony "'by offering specific, clear and convincing reasons for

---

[1] The ALJ rejected Plaintiff's testimony regarding his low back and knee pain at step two, finding that Plaintiff did not have a medically determinable spine, knee, or leg impairment. AR at 512-13. Plaintiff has not challenged this portion of the ALJ's analysis, so the Court will not further address Plaintiff's testimony regarding low back and knee pain. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (citing *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003)).

doing so. This is not an easy requirement to meet.'" *Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014-15). In evaluating the ALJ's determination at this step, the Court may not substitute its judgment for that of the ALJ. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). As long as the ALJ's decision is supported by substantial evidence, it should stand, even if some of the ALJ's reasons for discrediting a claimant's testimony fail. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

The ALJ gave reasons for rejecting Plaintiff's testimony that were specific to the symptoms from Plaintiff's left hand pain, headaches, and mental health. *See* AR at 511-16. The ALJ also gave two general reasons for rejecting all of Plaintiff's symptom testimony: Plaintiff allegedly magnified the severity of his symptoms, and Plaintiff failed to report income to the IRS. *Id.* at 517. The Court first addresses the ALJ's specific rejection of Plaintiff's testimony regarding each of his impairments, and then addresses the ALJ's two general reasons for rejecting Plaintiff's overall testimony.

### 1. Left Hand Pain

The ALJ rejected Plaintiff's testimony regarding his left hand pain for three reasons. First, the ALJ found that Plaintiff's testimony was not corroborated by the medical evidence. *Id.* at 511. Second, the ALJ found that Plaintiff did not comply with treatment, undermining his allegations. *Id.* at 512. Third, the ALJ found that Plaintiff's daily activities contradicted his testimony. *Id.*

The ALJ's first reason for rejecting Plaintiff's left hand pain symptom testimony fails. The ALJ rejected Plaintiff's testimony because a December 2016 neurological exam revealed normal limb strength, which the ALJ felt was inconsistent with someone who had no function in his left hand. *Id.* at 511-12, 758. The ALJ veered too far into territory reserved to medical

experts in reaching this conclusion. *See Moghadam v. Colvin*, No. C15-2009-TSZ-JPD, 2016 WL 7664487, at *6 (W.D. Wash. Dec. 21, 2016); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("[J]udges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor. . . . The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong.") (internal citations omitted). Whether those with loss of hand function experience diminished limb strength is not an established medical fact, and the ALJ erred in rejecting Plaintiff's testimony based on this assumption.

The ALJ's second reason for rejecting Plaintiff's left hand pain testimony is weak, at best. The ALJ's primary concern here was that Plaintiff failed to show up for a post-surgery appointment in September 2014 and was not seen again until June 2015. AR at 512, 762. "[A]n 'unexplained, or inadequately explained, failure to seek treatment' may be the basis for an adverse credibility finding unless one of a 'number of good reasons for not doing so' applies." *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (quoting *Fair*, 885 F.2d at 603). Plaintiff's failure to follow up on treatment undermines his testimony, but not so much as to overcome the ALJ's other errors. *See Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) (holding that "one weak reason," even if supported by substantial evidence, "is insufficient to meet the 'specific, clear and convincing' standard" for rejecting a claimant's testimony) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)). Moreover, the surgeon noted that Plaintiff had "significant stiffness" even after surgery, and had been doing home exercises. *Id.* at 762.

The ALJ's third reason for rejecting Plaintiff's left hand pain testimony fails review. An ALJ may reject a Plaintiff's symptom testimony based on his daily activities if they contradict

his testimony or "meet the threshold for transferable work skills." *Orn*, 495 F.3d at 639 (citing *Fair*, 885 F.2d at 603). But the ALJ's analysis must be a reasonable interpretation of the evidence. *See Thomas*, 278 F.3d at 954.

The ALJ cited two activities that he believed contradicted Plaintiff's testimony, but erred with respect to each. First, the ALJ discounted Plaintiff's testimony because he determined that Plaintiff "coach[ed] his daughters to play softball." AR at 512. But Plaintiff did not coach his daughters, he watched them play. *Id.* at 811. Watching softball does not contradict Plaintiff's testimony that he could not make a fist or grip with his left hand.

Second, the ALJ discounted Plaintiff's testimony regarding his left hand because Plaintiff "apparently sleeps in his car from time to time, which he presumably drives." *Id.* at 512 (internal citation omitted). The ALJ stated that driving "requires one to use his hands to grip and turn the steering wheel," so Plaintiff's ability to drive had to be inconsistent with his claim that he could not grip with his left hand. *Id.* This is an unreasonable reading of the evidence. Plaintiff slept in his car, but the record does not indicate whether and how much he drove it. *Id.* at 811. Moreover, it is possible to drive a car while only being able to grip with one hand. The ALJ thus erred in rejecting Plaintiff's testimony regarding his left hand pain symptoms.

**2. Headaches**

The ALJ gave two reasons for rejecting Plaintiff's testimony regarding the severity symptoms from his headaches. *Id.* at 515-16. First, the ALJ found that Plaintiff's claims were "not corroborated by the treatment notes during the period at issue." *Id.* Second, the ALJ found that Plaintiff's claims were undermined by his noncompliance with treatment. *Id.* at 515. Neither reason withstands scrutiny.

The ALJ's first reason for rejecting Plaintiff's symptom testimony fails because it is

neither accurate nor reasonable. The ALJ rejected Plaintiff's testimony because his medical records from December 2015 through April 2018 did not even mention headaches, and because a December 2016 neurological exam revealed normal cranial nerves. *Id.* at 515-16, 771-804. But Plaintiff's records from December 2015 to April 2018 reference chronic post-trauma headache as one of Plaintiff's ongoing problems. *Id.* at 774, 778, 782, 787, 791, 797, 801, 804, 807-08. And, again, the ALJ veered too far into medical expert territory by concluding that Plaintiff must not have painful headaches because he had normal cranial nerves. *See Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (recognizing that an ALJ is "not qualified as a medical expert").

The ALJ's second reason for rejecting Plaintiff's headache symptom testimony is not convincing. The ALJ rejected Plaintiff's testimony because he was referred to an eye doctor but failed to follow through. AR at 515, 808. The record indicates that Plaintiff did not follow through with the referral to an eye doctor because he never received the referral. *Id.* at 808. The ALJ unreasonably interpreted the record in finding that Plaintiff's failure to follow through on a referral he never received undermined his testimony. The ALJ thus erred in rejecting Plaintiff's headache symptom testimony.

### 3. Mental Health

The ALJ rejected Plaintiff's testimony regarding his mental health symptoms due to a lack of or failure to comply with treatment, and contradiction by Plaintiff's daily activities. *Id.* at 514, 516. Once again, neither reason survives review.

The ALJ's first reason for rejecting Plaintiff's mental health symptom testimony is not clear and convincing. The ALJ noted that Plaintiff only saw a mental health counselor twice after December 2013, the application date. *Id.* at 516. The ALJ further noted that Plaintiff appeared to report to one of his examining doctors that he had never been on psychiatric

medications despite having been prescribed such medications in June 2015 and receiving them through December 2015.  *Id.*  But Plaintiff's symptoms involve distrust of others—including doctors—and social anxiety.  *See, e.g., id.* at 363, 411, 441, 450, 491, 743, 810-11.  The Ninth Circuit has "particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'"  *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299-1300 (9th Cir. 1999) (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)).  The ALJ erred in rejecting Plaintiff's mental health symptom testimony without considering whether his symptoms contributed to his failure to comply with or seek treatment.

      The ALJ's second reason also fails to withstand scrutiny.  The ALJ discounted Plaintiff's mental health symptom testimony because he spent time with his children and managed basic activities such as personal hygiene.  AR at 514.  Interacting with one's own children does not contradict claims of difficulty getting along with others.  Furthermore, maintaining one's personal hygiene, preparing simple meals, and walking one's children to school are such basic activities that they do not contradict Plaintiff's claims of severe mental health symptoms.  *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.  One does not need to be 'utterly incapacitated' in order to be disabled.") (quoting *Fair*, 885 F.2d at 603).  The ALJ unreasonably rejected Plaintiff's mental health symptom testimony based on his daily activities.  Thus, the ALJ failed to give clear and convincing reasons to reject Plaintiff's mental health symptom testimony.

### 4. Symptom Magnification

The ALJ discounted all of Plaintiff's symptom testimony because he found evidence of symptom magnification. AR at 517. The ALJ noted that Plaintiff exhibited "lots of pain behaviors" when a doctor was evaluating his back in 2013. *Id.* at 387, 517. The ALJ also noted that imaging studies failed to explain Plaintiff's pain. *Id.* at 517, 763, 808. The ALJ further determined that Plaintiff "described an incapacitating lifestyle and severe limitations in his hands and legs. One would expect that someone with his level of decreased activity would lose muscle tone/bulk and develop atrophy. [However], he retained normal muscle tone/bulk in all limbs, and . . . had no signs of atrophy in his legs." *Id.* at 517.

The ALJ unreasonably interpreted the evidence in finding that Plaintiff magnified his symptoms. The phrase "pain behaviors" is not universally defined as demonstrating exaggeration as opposed to mere reaction to pain. And the ALJ's assumption that severe limitations would necessarily lead to atrophy is too much of a medical opinion, which, as discussed above, the ALJ is not competent to give. *See supra* Part II.A.1. The ALJ thus erred in rejecting Plaintiff's symptom testimony based on symptom magnification.

### 5. General Discrepancies

The ALJ last discounted Plaintiff's symptom testimony because Plaintiff had failed to report his income to the IRS between 1987 and 2003. AR at 517. An ALJ's evaluation of the claimant's symptom testimony should not "delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." *Trevizo*, 871 F.3d at 678 n.5 (citing Social Security Ruling 16-3p, 2017 WL 5180304 (Oct. 25, 2017)). But that is exactly what the ALJ did here. Plaintiff's failure to report income to the IRS during a time well before the alleged disability period is unrelated to the veracity of his symptom testimony, and cannot serve as a clear and convincing

reason to reject that testimony.

In sum, the ALJ failed to provide clear and convincing reasons to reject Plaintiff's symptom testimony regarding his left hand pain, headaches, and mental health. The ALJ's specific reasons for each impairment and general reasons for all of Plaintiff's testimony do not withstand scrutiny. The ALJ therefore harmfully erred. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1040-41 (9th Cir. 2007) (holding that ALJ's disability determination was not supported by substantial evidence where the residual functional capacity and hypotheticals to the vocational expert failed to include all of the claimant's impairments).

**B.     The ALJ Partially Erred in Evaluating the Medical Evidence**

Plaintiff contends that the ALJ erred in rejecting medical opinions from five doctors who evaluated Plaintiff's mental health: Carmela Harvey,[2] Robert Parker, Ph.D., David Widlan, Ph.D., George Ankuta, Ph.D., and Tasmyn Bowes, Psy.D. Pl. Op. Br. at 2-4, 13-16. To reject these opinions, which were contradicted by other evidence in the record, the ALJ was required to provide "specific and legitimate reasons that are supported by substantial evidence in the record." *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (citing *Andrews*, 53 F.3d at 1042). Plaintiff separates the ALJ's treatment of these doctors' opinions into two groups, so the Court will do the same.

**1.     The ALJ Partially Erred in Rejecting Dr. Harvey and Dr. Parker's Opinions**

Plaintiff first argues that ALJ Adams erred in rejecting the opinions of Dr. Harvey and Dr. Parker. Pl. Op. Br. at 2-4. Dr. Harvey examined Plaintiff on April 14, 2010. AR at 285-96.

---

[2] Defendant contends that although Dr. Harvey possesses a doctoral degree, she is not licensed as a medical doctor or psychologist. Def. Resp. Br. (Dkt. 12) at 4 n.1. But Defendant does not argue for a lower standard in assessing the ALJ's rejection of Dr. Harvey's opinions. *See id.* Nor does the standard matter because, as discussed below, the ALJ provided a specific and legitimate reason for rejecting Dr. Harvey's opinions. *See infra* Part II.B.1.

Dr. Harvey performed a mental status exam and mini mental status exam. *Id.* at 293-96. She opined that Plaintiff had severe limitations in his ability to exercise judgment, make decisions, perform routine tasks, interact appropriately with coworkers, supervisors, and the public, tolerate normal workplace pressures, and maintain appropriate behavior in a normal work setting. *Id.* at 289-90.

Dr. Parker first examined Plaintiff on March 29, 2011. *Id.* at 319-26. Dr. Parker conducted a clinical interview and performed a mental status exam. *Id.* at 323-26. He opined that Plaintiff was markedly limited in his ability to learn new tasks and perform routine tasks without undue supervision. *Id.* at 321. Dr. Parker opined that Plaintiff was severely limited in his ability to communicate and perform effectively in a work setting with even limited public contact, and maintain appropriate behavior in a work setting. *Id.*

Dr. Parker examined Plaintiff again on March 27, 2012. *Id.* at 313-18. Dr. Parker again conducted a clinical interview and performed a mental status exam. *Id.* at 314-17. He opined that Plaintiff's prognosis for employment was "very poor," and that Plaintiff had "minimal ability to handle daily activities beyond basic survival needs." *Id.* at 315. Dr. Parker opined that "[t]he approximate date of onset of [Plaintiff's] symptoms or length of disability as best determined is [eight] years." *Id.*

The ALJ gave Dr. Harvey and Dr. Parker's opinions little weight because they were "issued during a period that was already adjudicated by the prior administratively final determination." *Id.* at 519. The ALJ partially erred in making this determination.

Plaintiff had previously applied for benefits on April 21, 2011. *See id.* at 222, 508. That claim was denied on December 5, 2011. *See id.* Plaintiff did not appeal that denial, so it became final. *See id.* Under the principle of *res judicata*, Plaintiff is deemed to have been not disabled

on or before December 5, 2011. *See Lester*, 81 F.3d at 827; *see also Krumpelman v. Heckler*, 767 F.2d 586, 588 (9th Cir. 1985), *cert. denied,* 475 U.S. 1025 (1986). The earliest Plaintiff could therefore be considered disabled is December 6, 2011.

The ALJ, attempting to apply *res judicata*, found that the period of alleged disability did not go all the way back to Plaintiff's claimed onset date of April 8, 2003. AR at 508. But ALJ Adams used the wrong onset date. Rather than consider the period at issue as beginning on December 6, 2011, ALJ Adams stated that the period at issue began on December 19, 2013, the date on which Plaintiff filed his current application. *Id.* As Chief Magistrate Judge Tsuchida explained the last time this case was before the Court, although the regulations state that a claimant is not eligible to receive benefits until one month after filing his application, "they 'say nothing about when a claimant's disability actually begins.'" *Id.* at 623 (quoting *Owen v. Colvin*, No. 15-5933-KLS, 2016 WL 6080910, at *3 (W.D. Wash. Oct. 18, 2016)).

The effect of ALJ Adams's error—as the Commissioner concedes—is that it undermines his reasoning with respect to Dr. Parker's March 2012 opinion. Def. Resp. Br. at 5. ALJ Adams reasonably rejected Dr. Harvey's April 2010 opinion and Dr. Parker's March 2011 opinion because they related to a period when Plaintiff had already been determined to be not disabled. AR at 519-20. But that reasoning does not apply to Dr. Parker's March 2012 opinion, and thus the ALJ erred in rejecting it.

The Commissioner argues that the ALJ's error was harmless because Dr. Parker's March 2012 opinion is "substantially similar to" Dr. Widlan's opinions, which the Commissioner argues the ALJ reasonably rejected. Def. Resp. Br. at 5. As discussed below, the ALJ erred in rejecting Dr. Widlan's opinions, so the Commissioner's argument fails. *See infra* Part II.B.2.

//

### 2. The ALJ Harmfully Erred in Rejecting Dr. Widlan, Dr. Ankuta, and Dr. Bowes's Opinions

Plaintiff argues that the ALJ erred in rejecting the opinions of Dr. Widlan, Dr. Ankuta, and Dr. Bowes. Pl. Op. Br. at 13-15. Dr. Widlan examined Plaintiff in January 2013. AR at 343-52. Dr. Widlan conducted a clinical interview, performed a mental status exam, administered several psychological tests, and reviewed limited records. *Id.* He opined that Plaintiff was markedly to severely limited in nearly all areas of social and cognitive functioning. *Id.* at 345.

Dr. Widlan evaluated Plaintiff again in January 2015. *Id.* at 332-42. Dr. Widlan again conducted a clinical interview, performed a mental status exam, administered psychological tests, and reviewed limited records. *Id.* He maintained his opinion that Plaintiff was markedly to severely limited in nearly all areas of social and cognitive functioning. *Id.* at 334.

Dr. Ankuta evaluated Plaintiff on February 26, 2014. *Id.* at 257-59. Dr. Ankuta conducted a clinical interview, performed a mental status exam, and reviewed limited records. *Id.* He opined that Plaintiff's "memory may not be adequate for recalling simple or complex instructions at work," he "may have difficulty sustaining the pace of competitive work," and he "may have difficulty functioning socially in a competitive work situation." *Id.* at 259.

Dr. Bowes examined Plaintiff on November 1, 2016. *Id.* at 743-50. Dr. Bowes conducted a clinical interview, performed a mental status exam, reviewed limited records, and partially administered a psychological test. *Id.* She opined that Plaintiff was severely limited in his ability to understand, remember, and follow detailed instructions, perform activities within a regular work schedule, maintain attendance, communicate and perform effectively in a work setting, maintain appropriate behavior, and complete a normal work day or week without interruptions from his psychologically based symptoms. *Id.* at 746. Dr. Bowes further opined

that Plaintiff was markedly limited in his ability to learn new tasks and perform routine tasks without undue supervision. *Id.*

The ALJ gave all of these opinions little weight. *Id.* at 519-20. The ALJ reasoned that the doctors' opinions were inconsistent with Plaintiff's ability to care for his three young daughters, were undermined by Plaintiff's noncompliance with and lack of treatment, and relied too heavily on Plaintiff's self-reports. *Id.* at 520.

The ALJ's first reason for rejecting these opinions is not sufficient to disregard three doctors' opinions. As discussed above, the fact that Plaintiff was able to interact with his children does not undermine claims that he struggles with general social interactions. *See supra* Part II.A.3. Furthermore, the ALJ's suggestion that Plaintiff "help[ed] care for his three youngest daughters" is not supported by the record. The record states that Plaintiff "spends time with" his three youngest daughters, who "live with their mother." AR at 743. Nowhere does the record substantiate the ALJ's conclusion that Plaintiff provided care to his daughters that rose to such a level as to contradict professional medical opinions.

The ALJ's second reason for rejecting the opinions of Dr. Widlan, Dr. Ankuta, and Dr. Bowes—Plaintiff's lack of or noncompliance with treatment—fails for the same reasons it failed with respect to Plaintiff's symptom testimony. *See supra* Part II.A.3. The ALJ did not consider the extent to which Plaintiff's financial situation and mental health impairments prevented him from getting or following through with treatment. *Id.*

Finally, the ALJ's determination that the opinions of Dr. Widlan, Dr. Ankuta, and Dr. Bowes were too heavily based on Plaintiff's self-reports fails because it is not supported by the record. Each doctor conducted at least a clinical interview and performed a mental status exam, both of which are considered "objective measures and cannot be discounted as self-report."

*Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).  Their opinions thus cannot be considered too heavily based on Plaintiff's self-reports, and the ALJ erred in rejecting the doctors' opinions on this basis.

In sum, the ALJ failed to provide any specific and legitimate reasons for rejecting the opinions of Dr. Widlan, Dr. Ankuta, and Dr. Bowes.  The ALJ therefore erred.

**C.     Scope of Remand**

Plaintiff asks the Court to remand this matter for further administrative proceedings.  Pl. Op. Br. at 16.  The Court agrees that this is the appropriate remedy.  *See McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).

On remand, the ALJ shall reevaluate Plaintiff's symptom testimony regarding his left hand pain, headaches, and mental health.  The ALJ shall reevaluate Dr. Parker's March 2012 opinion, and the opinions of Dr. Widlan, Dr. Ankuta, and Dr. Bowes.  The ALJ shall conduct all further proceedings necessary to reevaluate the disability determination in light of this opinion.

### III.     CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

DATED this 12th day of August, 2019.

Ronald B. Leighton
United States District Judge